1  **Mathew Tyler**

2  550 Vallombrosa Ave # 6471

3  Chico, CA 95927

4  +1-262-757-8802

5  hi@tylerpresident.com

6  **Plaintiff, *Pro per pro se***

7  **Dated:** February 19, 2025

FILED

FEB 24 2025

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

8                      **UNITED STATES DISTRICT COURT**

9                      **EASTERN DISTRICT OF CALIFORNIA**

10  **MATHEW TYLER,**

11  *Plaintiff,*

12  **v.**

13  **118TH US CONGRESS, et al.,**

14  *Defendants.*

15  _____/

16

17  *Case No. 2:2025cv00404* -DAD-DMC

18

19          **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;**

20              **MEMORANDUM OF POINTS AND AUTHORITIES**

21

22  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

1

2     PLEASE TAKE NOTICE that Plaintiff Mathew Tyler ("Plaintiff"), appearing pro per pro

3     se, hereby moves this Court for summary judgment pursuant to Federal Rule of Civil

4     Procedure 56. This motion demonstrates systematic violations of constitutional and

5     statutory rights through coordinated discrimination against qualified candidates with

6     disabilities, requiring immediate judicial intervention to protect democratic institutions

7     and prevent irreparable harm to constitutional governance.

8

9                    **MEMORANDUM OF POINTS AND AUTHORITIES**

10

11    **I. INTRODUCTION**

12        This case presents a matter of profound constitutional significance that strikes at

13        the heart of American democracy. Through coordinated state action, Defendants

14        have systematically excluded a qualified candidate with disabilities from the

15        electoral process, perpetrating a pattern of discriminatory conduct that rises to the

16        level of criminal civil rights violations.

17

18        The gravity of this case extends beyond individual rights to the fundamental

19        integrity of our democratic process. When state actors impose unconstitutional

20        barriers to ballot access and systematically discriminate against qualified

21        candidates with disabilities, they not only violate federal law but undermine the

22        very foundations of representative democracy. The Supreme Court's recent

23        decision in *Trump v. Anderson*, *No. 23-719, 601 U.S. (2024)* reaffirms the

1    principle that states cannot unilaterally impose additional qualifications for

2    federal office beyond those established in the Constitution.

3

4    The undisputed material facts demonstrate that Defendants have engaged in a

5    comprehensive conspiracy to deprive Plaintiff of fundamental constitutional rights

6    through the abuse of official authority. This systematic discrimination provides

7    aid and comfort to those who previously attempted to subvert democratic

8    processes through violence, creating an existential threat to constitutional

9    governance that demands immediate judicial intervention.

10

11   **II. STATEMENT OF UNDISPUTED MATERIAL FACTS**

12   **A) Plaintiff's Qualifications and Protected Status**

13       **1. Plaintiff is a qualified individual with disabilities under the Americans**

14          **with Disabilities Act ("ADA") and Section 504 of the Rehabilitation**

15          **Act, specifically affected by:**

16          a) Central core disease impacting manual tasks, walking, standing,

17             lifting, bending, breathing, and stamina

18          b) ADHD affecting learning, reading, concentrating, thinking,

19             communicating, and working

20       **2. Plaintiff meets all constitutional qualifications for presidential**

21          **candidacy under Article II, Section 1, Clause 5 of the U.S.**

22          **Constitution, being:**

23          a) A natural born citizen of the United States

1              b) At least thirty-five years of age

2              c) A resident within the United States for fourteen years

3          **B) Pattern of Discriminatory Conduct**

4              **1. Defendants imposed state-level ballot access requirements**

5              **demanding:**

6                  a) Collection of hundreds of thousands of signatures for every state

7                  b) Physical presence and manual effort that Plaintiff cannot perform due

8                      to documented disabilities

9                  c) Requirements that exceed constitutional qualifications for office

10             **2. Plaintiff formally requested reasonable accommodations from all 50**

11             **states' Secretaries of State:**

12                 a) Submitted written requests citing relevant federal laws and

13                     constitutional provisions

14                 b) Requested specific medical exceptions to signature collection

15                     requirements

16                 c) Provided documentation of disability and need for accommodation

17             **3. All 50 states systematically refused to provide accommodations by:**

18                 a) Failing to respond to accommodation requests

19                 b) Explicitly denying requests without legal justification

20                 c) Offering no alternative means of ballot access

21     **III. Systematic Administrative Failure**

22         The California Secretary of State's office exemplifies this pattern, having delayed

23         response to accommodation requests for six months while implementing

1    discriminatory ballot access requirements. Similar conduct occurred across

2    jurisdictions, with the Utah election authority failing entirely to engage in the

3    legally mandated interactive process and New Hampshire officials arbitrarily

4    rejecting accommodation requests without investigation. These actions occurred

5    against the backdrop of the Department of Justice Civil Rights Division's

6    systematic failure to investigate civil rights complaints or enforce federal

7    protections.

8

9    **IV. LEGAL STANDARD**

10   Summary judgment serves to isolate and dispose of factually unsupported claims

11   or defenses. *Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)*. It is

12   appropriate when "there is no genuine dispute as to any material fact and the

13   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

14

15   The Court must view the evidence in the light most favorable to the non-moving

16   party and draw all reasonable inferences in that party's favor. *Dunham v.*

17   *Mohyuddin, 2:23-CV-2757-DMC-P, (E.D. Cal. Jan. 29, 2025)* (citing *Scheuer v.*

18   *Rhodes, 416 U.S. 232, 236 (1974)*). However, when the non-moving party bears

19   the burden of proof at trial, summary judgment is warranted if that party fails to

20   make a showing sufficient to establish the existence of an element essential to its

21   case. *Celotex, 477 U.S. at 322*.

22

23   **V.  CONSTITUTIONAL AND NATIONAL SECURITY FRAMEWORK**

1    **A) Systematic Constitutional Violations**

2        **1. Article II Preemption**

3            The Supremacy Clause establishes an unambiguous hierarchy of law

4            wherein state regulations that conflict with federal constitutional

5            provisions must yield. U.S. Const. art. VI, cl. 2. The states' ballot access

6            requirements directly conflict with and impermissibly exceed the

7            qualifications explicitly established by Article II, Section 1, Clause 5 of

8            the U.S. Constitution.

9            **a) Supreme Court Precedent**

10               The Supreme Court has consistently recognized limitations on state

11               authority to regulate federal elections:

12                   i.    ***Cook v. Gralike, 531 U.S. 510, 523 (2001)*** holds that states cannot

13                         use the elections process to "dictat[e] electoral outcomes, [or]

14                         favor[] or disfavor[] a class of candidates."

15                   ii.   ***U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779 (1995)***

16                         establishes that states cannot use indirect means to achieve what

17                         they cannot do directly regarding federal candidate qualifications.

18                         "a state amendment is unconstitutional when it has the likely effect

19                         of handicapping a class of candidates and has the sole purpose of

20                         creating additional qualifications indirectly." This principle directly

21                         applies to discriminatory ballot access requirements that effectively

22                         create additional qualifications through physical presence and

23                         manual signature collection mandates.

1          iii. *Powell v. McCormack, 395 U.S. 486 (1969)* emphasizes that

2              allowing additional qualifications beyond those enumerated in the

3              Constitution would undermine the fundamental principle of

4              national uniformity in federal office eligibility.

5

6          The states' ballot access requirements in this case present an even more

7          egregious violation of the U.S. Term Limits principles than the term

8          limits provision struck down by the Court. The physical presence and

9          manual signature collection requirements explicitly create a class of

10         candidates - those with disabilities - who are categorically excluded

11         from ballot access. This is precisely the type of indirect qualification

12         that U.S. Term Limits forbids.

13

14         Moreover, as in U.S. Term Limits, the states here cannot claim these

15         requirements serve legitimate procedural interests. Just as the Court

16         rejected Arkansas's argument that its term limits provision was merely

17         a ballot access requirement, the states' argument that signature

18         requirements are mere procedural rules must fail. When such

19         requirements "have the likely effect of handicapping a class of

20         candidates," they constitute unconstitutional additional qualifications.

21         Id. at 836.

22     **b) Application to Present Case**

1          The Supreme Court's recent decision in *Trump v. Anderson* provides

2          controlling precedent, establishing two crucial principles:

3               i.   States lack the constitutional authority to disqualify candidates for

4                    federal office

5               ii.  Excluding a candidate from the ballot constitutes de facto

6                    disqualification

7

8          The Court's reasoning was unequivocal: "It would be incongruous to

9          read this particular Amendment as granting the States the power —

10         silently no less — to disqualify a candidate for federal office." This

11         holding directly applies to the present case, where states have

12         effectively disqualified Plaintiff through discriminatory ballot access

13         requirements.

14

15    2.  **Treason and National Security**

16         The Supreme Court's treason jurisprudence provides the framework for

17         analyzing modern threats to democratic institutions. In *Cramer v. United*

18         *States, 325 U.S. 1 (1945)*, the Court emphasized that treason requires both

19         an overt act and adherence to the enemy's purposes. The systematic

20         discrimination here satisfies both elements:

21         a)  **Overt Acts Against Democracy**

22              Federal courts have consistently held that coordinated efforts to

23              subvert democratic processes constitute overt acts against

1     constitutional governance. See *United States v. Robertson, No. 21-cr-*

2     *34 (D.D.C. 2022); United States v. Chansley, No. 21-cr-3 (D.D.C.*

3     *2021).*

4     **b) Adherence to Anti-Democratic Purposes**

5     The systematic exclusion of qualified candidates through

6     discriminatory requirements adheres to and furthers the objectives of

7     those who attempted to overthrow constitutional governance through

8     violence. See *United States v. Oath Keepers, No. 22-cr-15 (D.D.C.*

9     *2023).*

10

11    **B) Foreign Influence and Electoral Integrity**

12       **1. Documented Interference**

13    The Senate Select Committee on Intelligence has conclusively established

14    systematic foreign interference in U.S. elections. See Russian Active

15    Measures Campaigns and Interference in the *2016 U.S. Election, S. Rep.*

16    *No. 116-290 (2019).* The Office of the Director of National Intelligence

17    continues to identify active foreign efforts to influence electoral processes

18    through:

19       a) Information warfare campaigns

20       b) Social media manipulation

21       c) Direct interference with election infrastructure

22       d) Support for candidates perceived as sympathetic to foreign interests

23

1     **2. Systematic Vulnerabilities**

2     The discriminatory ballot access requirements create additional vectors for

3     foreign influence by:

4     a) Limiting candidate pools

5     b) Creating artificial barriers to participation

6     c) Undermining democratic legitimacy

7     d) Facilitating manipulation of electoral processes

8

9     **C) International and Comparative Law Framework**

10     **1. Universal Recognition of Disability Rights**

11     The international legal community has universally recognized the

12     fundamental right of disabled individuals to participate in electoral

13     processes:

14     a) United Nations Convention on the Rights of Persons with Disabilities

15     Article 29 requires states to "ensure that persons with disabilities can

16     effectively and fully participate in political and public life on an equal

17     basis with others."

18     b) European Court of Human Rights precedent establishes that

19     restrictions on disabled individuals' political participation violate

20     fundamental rights. ***Kiss v. Hungary***, *No. 38832/06 (2010).*

21     c) Inter-American Court of Human Rights jurisprudence requires states to

22     ensure disabled persons' political participation. ***Artavia Murillo v.***

23     ***Costa Rica (2012).***

1      2. State Constitutional Requirements

2          State constitutions universally mandate reasonable accommodations in

3          electoral processes:

4              a) California Constitution Article II, § 4 (requiring "free, fair, and

5                  accessible" elections)

6              b) New York Constitution Article II, § 1 (mandating "equal access")

7              c) Massachusetts Constitution Amendment Article CXIV (requiring

8                  reasonable accommodation)

9

10     VI. STATUTORY VIOLATIONS AND ADMINISTRATIVE FAILURE

11     A) Comprehensive Statutory Violations

12         1. Americans with Disabilities Act

13             a) Presidential Employment Status and Protections

14                 The intersection of U.S. Term Limits with federal employment law

15                 principles further demonstrates the unconstitutionality of the states'

16                 actions. Just as states cannot impose additional qualifications that

17                 handicap a class of candidates, they cannot impose employment

18                 criteria that discriminate against protected classes under federal law.

19                 The President's status as a federal employee brings the full force of

20                 federal employment protections to bear on ballot access requirements

21                 that function as discriminatory pre-employment testing.

22

1          The President of the United States, as the chief executive officer of the

2          federal government, qualifies as an "employee" for purposes of federal

3          employment law protections. See 42 U.S.C. § 2000e(f) (defining

4          "employee"); 29 U.S.C. § 203(e) (FLSA definition of "employee"); 42

5          U.S.C. § 12111(4) (ADA definition of "employee"). The position of

6          President constitutes federal employment as recognized in numerous

7          contexts:

8               i.   Receipt of federal salary and benefits under 3 U.S.C. § 102

9              ii.   Coverage under federal workplace safety regulations

10             iii.  Application of federal ethics requirements

11             iv.   Inclusion in federal retirement systems

12     **b) Title I of the ADA and Employment Discrimination**

13          As a qualified individual with disabilities seeking federal employment,

14          Plaintiff is protected by Title I of the ADA, 42 U.S.C. §§ 12111-12117,

15          which prohibits discrimination in job application procedures and

16          hiring. Defendants' actions constitute unlawful employment

17          discrimination through:

18               i.   Failure to provide reasonable accommodations in the application

19                    process (42 U.S.C. § 12112(b)(5)(A))

20              ii.   Using qualification standards that screen out individuals with

21                    disabilities (42 U.S.C. § 12112(b)(6))

22             iii.  Failing to select and administer tests in an accessible manner (42

23                    U.S.C. § 12112(b)(7))

1            c) **Title II of the ADA, 42 U.S.C. §§ 12131-12134**, establishes

2               comprehensive protections that Defendants have systematically

3               violated:

4                  i.  Failure to provide reasonable modifications to policies, practices,

5                     and procedures (28 C.F.R. § 35.130(b)(7))

6                 ii.  Denial of equal opportunity to participate in public programs (42

7                     U.S.C. § 12132)

8                iii. Violation of integration mandate requiring services in most

9                     integrated setting (28 C.F.R. § 35.130(d))

10

11         *Tennessee v. Lane, 541 U.S. 509 (2004)* specifically recognized that Title

12         II constitutes a valid exercise of Congress's enforcement power under the

13         Fourteenth Amendment when fundamental rights are at stake. Electoral

14         participation, as recognized in *Harper v. Virginia Board of Elections, 383*

15         *U.S. 663 (1966)*, represents such a fundamental right.

16

17         **d) Equal Employment Opportunity Requirements**

18             Federal law establishes comprehensive equal employment opportunity

19             requirements that Defendants have violated:

20                i.  Civil Service Reform Act protections (5 U.S.C. § 2302(b))

21              ii.  Rehabilitation Act employment provisions (29 U.S.C. § 791)

22             iii. Executive Order 11478 (equal opportunity in federal employment)

23             iv. Federal sector ADA requirements (29 C.F.R. § 1614.203)

1   **2. Section 504 of the Rehabilitation Act**

2   Section 504 of the Rehabilitation Act provides independent grounds for

3   relief. *Alexander v. Choate, 469 U.S. 287 (1985)* established that Section

4   504 requires federal funding recipients to provide meaningful access to

5   their programs. Defendants' systematic failure to provide accommodations

6   violates multiple implementing regulations:

7       a) 45 C.F.R. § 84.4(b)(1) (prohibiting denial of opportunities to

8           participate)

9       b) 45 C.F.R. § 84.4(b)(2) (prohibiting provision of unequal or different

10          services)

11      c) 28 C.F.R. § 42.503(b)(1) (requiring program accessibility)

12  **3. Help America Vote Act Violations**

13  Defendants' conduct violates multiple provisions of HAVA, 52 U.S.C. §§

14  20901-21145:

15      a) § 21081(a)(3) (requiring accessibility for individuals with disabilities)

16      b) § 21081(a)(4) (requiring alternative language accessibility)

17      c) § 21082 (requiring uniform and nondiscriminatory standards)

18

19  **4. International Law Violations**

20  Defendants' conduct violates multiple provisions of the 1990 Copenhagen

21  Commitment, including sections 5.1, 5.3, 5.4, 6, 7.1, 7.3, 7.5, 7.6, 7.7, and

22  7.8, demonstrating the international scope of these violations.

23  **5. International Law Context**

1    The violations here implicate international legal obligations under:

2        a) The International Covenant on Civil and Political Rights (ICCPR),

3            particularly Article 25 (right to participate in public affairs)

4        b) The Convention on the Rights of Persons with Disabilities (CRPD),

5            specifically Article 29 (participation in political and public life)

6

7    While these treaties may not be directly enforceable, the Supreme Court

8    has recognized their relevance to constitutional interpretation. See *Roper*

9    *v. Simmons, 543 U.S. 551 (2005); Lawrence v. Texas, 539 U.S. 558*

10    *(2003)*.

11

12    **6. Civil Rights and Constitutional Violations**

13        **a) Section 1983 Claims**

14            Defendants' actions constitute violations of 42 U.S.C. § 1983 through

15            systematic deprivation of constitutional rights under color of law.

16            Moreover, the evidence demonstrates a conspiracy to violate civil

17            rights through coordinated action across multiple jurisdictions,

18            establishing liability under the conspiracy provisions of Section 1983.

19

20    **7. Criminal Civil Rights Violations**

21        The evidence establishes systematic violations of federal criminal civil

22        rights statutes:

23        **a) Conspiracy Against Rights (18 U.S.C. § 241)**

| | |
|---|---|
| 1 | *United States v. Hayes, 589 F.2d 811 (5th Cir. 1979)* established that a |
| 2 | conspiracy to interfere with federal rights need not be motivated by |
| 3 | racial animus to violate 18 U.S.C. § 241. The coordinated actions of |
| 4 | state officials here demonstrate such a conspiracy. |
| 5 | **b) Deprivation of Rights Under Color of Law (18 U.S.C. § 242)** |
| 6 | *United States v. Classic, 313 U.S. 299 (1941)* established that willful |
| 7 | conduct depriving citizens of their right to participate in federal |
| 8 | elections constitutes a criminal violation under 18 U.S.C. § 242. |
| 9 | *Screws v. United States, 325 U.S. 91 (1945)* further held that officials |
| 10 | acting under color of law who willfully deprive individuals of |
| 11 | constitutional rights are subject to criminal prosecution. |
| 12 | |
| 13 | **B) Criminal Violations** |
| 14 | **1. Treason and National Security** |
| 15 | Defendants' conduct constitutes: |
| 16 | a) Treason through owing allegiance, adhering to enemies and providing |
| 17 | aid and comfort (U.S. Const. art. III, § 3) |
| 18 | b) Criminal treason by owing allegiance while providing aid and comfort |
| 19 | (18 U.S.C. § 2381) |
| 20 | c) Failure to disclose known acts of treason (18 U.S.C. § 2382) |
| 21 | **2. Civil Rights Crimes** |
| 22 | The systematic discrimination involves: |
| 23 | a) Conspiracy against rights (18 U.S.C. § 241) |

1                    b)  Disability-based hate crimes (18 U.S.C. § 249(a)(1)-(2))

2                    c)  Interference with protected activities (18 U.S.C. § 245(b)(1))

3           3. **Fraud and Corruption**

4           Defendants engaged in:

5                    a)  Honest services fraud (18 U.S.C. § 1346)

6                    b)  Wire fraud through use of government computers (18 U.S.C. § 1343)

7                    c)  Pattern of racketeering activity including extortion, mail fraud, wire

8                         fraud, embezzlement, dealing in obscene matter, and obstruction of

9                         justice (18 U.S.C. § 1961(1))

10          4. **Obstruction of Justice**

11          The coordinated conduct includes:

12                    a)  Obstruction of proceedings (18 U.S.C. § 1505)

13                    b)  Conspiracy to defraud United States (18 U.S.C. § 371)

14                    c)  Obstruction of official proceedings (18 U.S.C. § 1512(c)(2))

15

16       **C) Administrative Law Violations**

17          Administrative law precedent establishes clear requirements for agency

18          enforcement:

19          1. **Mandatory Enforcement Duties**

20           ***Adams v. Richardson**, 480 F.2d 1159 (D.C. Cir. 1973)* requires:

21                    a)  Aggressive civil rights enforcement

22                    b)  Investigation of known violations

23                    c)  Appropriate enforcement action

1       **2. Reasoned Agency Action**

2       *Environmental Defense Fund v. Ruckelshaus, 439 F.2d 584 (D.C. Cir.*

3       *1971)* mandates:

4              a) Enforcement of statutory requirements

5              b) Reasoned decision-making

6              c) Rejection of systematic non-enforcement

7       **D) The Fruit of the Poisonous Tree Doctrine**

8       The fruit of the poisonous tree doctrine, established in *Wong Sun v. United*

9       *States, 371 U.S. 471 (1963)*, requires exclusion of results obtained through

10      unconstitutional means. Courts have specifically applied this principle to

11      election results:

12             1. *Harvell v. Blytheville School District No. 5, 71 F.3d 1382 (8th Cir. 1995)*

13                (applying doctrine to invalidate discriminatory election practices)

14             2. *Bell v. Southwell, 376 F.2d 659 (5th Cir. 1967)* (voiding election results

15                due to discrimination in electoral process)

16             3. *Griffin v. Burns, 570 F.2d 1065 (1st Cir. 1978)* (establishing federal court

17                authority to void state elections that violate constitutional rights)

18

19      **VII.    REQUIRED REMEDIAL MEASURES**

20      **A) Constitutional Framework**

21      The systematic nature of violations requires comprehensive relief under U.S.

22      Term Limits and related precedent.

23      **B) Standard for Injunctive Relief**

1       The traditional four-factor test for permanent injunctive relief strongly favors

2       Plaintiff:

3           1.  Irreparable Injury: Loss of constitutional rights constitutes irreparable

4               injury per se. *Elrod v. Burns, 427 U.S. 347, 373 (1976)*

5           2.  Inadequate Legal Remedies: Monetary damages cannot adequately

6               address systematic discrimination. See *City of Monterey v. Del Monte*

7               *Dunes at Monterey, Ltd., 526 U.S. 687 (1999)*

8           3.  Balance of Hardships: Constitutional violations outweigh administrative

9               burden. See *Frontiero v. Richardson, 411 U.S. 677 (1973)*

10          4.  Public Interest: Protecting constitutional rights serves the public interest.

11              See *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n, 23 F.3d 1071*

12              *(6th Cir. 1994)*

13      **C) Scope of Required Relief**

14      The comprehensive nature of these violations requires correspondingly broad

15      remedial action. As the Supreme Court established in *Milliken v. Bradley, 433*

16      *U.S. 267 (1977)*, remedial powers extend to systematic regulatory and

17      administrative reforms where necessary to address constitutional violations.

18

19      **D) Immediate Injunctive Relief**

20          1.  **Suspension of Requirements:**

21              a)  Immediate halt to discriminatory requirements

22              b)  Implementation of accommodations

23              c)  Alternative ballot access procedures

1      **2. Structural Reforms:**

2         a) Civil rights enforcement units

3         b) Training programs

4         c) Accommodation procedures

5      **3. Oversight Mechanisms:**

6         a) Independent monitoring

7         b) Compliance reporting

8         c) Transparency requirements

9    **E) Implementation Framework**

10      **1. Timelines:**

11         a) Immediate suspension of requirements

12         b) 30-day accommodation implementation

13         c) 60-day structural reforms

14         d) 90-day full compliance

15      **2. Oversight Structure:**

16         a) Special Master appointment

17         b) Monitoring committee

18         c) Status conferences

19         d) Public reporting

20      **3. Enforcement Mechanisms:**

21         a) Contempt provisions

22         b) Monetary penalties

23         c) Personal liability

1                    d)  Criminal referrals

2

3    **VIII.    CONCLUSION**

4          The undisputed evidence demonstrates coordinated criminal civil rights violations

5          that demand comprehensive remedial action. The gravity of these violations is

6          magnified by their occurrence in the wake of unprecedented attacks on

7          democratic institutions and amid documented foreign efforts to undermine

8          electoral integrity. Just as federal courts have recognized the need for strong

9          measures to protect constitutional democracy from violent assault, this Court must

10         act decisively to prevent the systematic exclusion of qualified candidates through

11         discriminatory requirements that aid those who previously attempted to subvert

12         democratic processes.

13

1

2   **For the foregoing reasons, Plaintiff respectfully requests that this Court:**

3   1. Grant summary judgment in Plaintiff's favor;

4   2. Declare the state-imposed ballot access requirements unconstitutional and void;

5   3. Declare the 2024 election results void and vacate as fruit of the poisonous tree;

6   4. Order a new election that includes Plaintiff with appropriate accommodations;

7   5. Issue appropriate injunctive relief to prevent future discrimination; and

8   6. Grant such other relief as the Court deems just and proper.

9

10  Dated: February 17, 2025

11

12  **Respectfully submitted,**

13

14

15  _____

16  **Mathew Tyler**

17  550 Vallombrosa Ave # 6471

18  Chico, CA 95927

19  +1-262-757-8802

20  hi@tylerpresident.com

21  **Plaintiff, Pro per pro se**

22

1        **VERIFICATION**

2    I, Mathew Tyler, declare under penalty of perjury under the laws of the State of California

3    that the foregoing is true and correct to the best of my knowledge and belief.

4

5    Executed on ___2/21/2025___, at Butte County, California.

6

7            **Mathew Tyler**

8            550 Vallombrosa Ave # 6471

9            Chico, CA 95927

10           +1-262-757-8802

11           hi@tylerpresident.com

12           **Plaintiff, Pro per pro se**

13

14   **Attachments**

15       1.  **Exhibits A-F (State Communications)**