UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATHEW TYLER,<br><br>    Plaintiff,<br><br>    v.<br><br>118th US CONGRESS, et al.,<br><br>    Defendants. | No.  2:25-cv-0404 DAD AC (PS)<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff paid the filing fee and is proceeding in this matter pro se; pre-trial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21).  Plaintiff sues various federal and state governmental entities and several California state officials.  Defendant New Hampshire Department of Justice moved to dismiss.  ECF No. 15.  Defendants Utah Attorney General and Utah Lt. Governor ("Utah defendants") have also moved to dismiss.  ECF No. 23.  Defendants California Attorney General, Fiona Ma, and Shirely Weber ("California defendants") moved to dismiss.  ECF No. 33.  The federal defendants made a special appearance to notify the court that service has not been properly completed upon them.  ECF No. 42.  The remaining defendants (California Assemblyman James Gallagher and the Rhode Island EEOC) have not appeared, but as explained below they have not been properly served.

Plaintiff has also filed several motions which are addressed below.

////

1

## I. Background

Plaintiff filed a 147-page complaint on January 30, 2025.  ECF No. 1.  Plaintiff alleges that he is "an indigent layperson, a U.S. Citizen, resident of California, and a 2015-2084 Presidential candidate."  ECF No. 1 at 2.  Plaintiff is a "qualified individual with a disability under the Americans with Disabilities Act ('ADA') and Section 504 of the Rehabilitation Act."  Id.  Plaintiff alleges that in 2024, he made a Section 504/ADA request for a reasonable accommodation to the Secretaries of State for all 50 states requesting a medical exemption to the requirement of collecting "hundreds of thousands of signatures from each state to obtain unaffiliated ballot access in the 2024 general election."  Id. at 7.  All 50 states refused to provide this accommodation, which plaintiff alleges violated his constitutional rights.  Id.

Plaintiff asserts causes of action for (1) "Violation of the First Amendment," (2) "Violation of the Fifth and Fourteenth Amendments," (3) "Violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act," (4) "Conspiracy to Interfere with Civil Rights," (5) "Treason," and (6) twenty-five "additional counts" that assert, without explanation, violation of various statutes and regulations.  ECF No. 1 at 9-12.  Plaintiff asks the court to "Declare the entire 2024 Presidential election proceedings, results, and any resulting orders as 'Fruit of the Poisonous Tree' tainted by the widespread, national election interference and tampering by state-level personal in all 50 states."  Id. at 13.

## II. Defective Service

On January 30, 2025, a summons and scheduling order was issued in this case ordering the plaintiff to serve a copy of the scheduling order and complete service of process within 90 days of filing the complaint.  ECF Nos. 5, 6.  Plaintiff was cautioned that failure to complete service within 90 days may result in dismissal pursuant to Fed. R. Civ. P. 4(m).  Id.  On April 10, 2025, plaintiff filed a "proof of service" saying that he "Mailed via USPS ground advantage, postage prepaid with cash (USD).  All returned parcels had the addresses checked/corrected and were mailed ASAP."  ECF No. 26 at 2.  He provided a list of entities he asserts were served, identifying 65 separate entities (mostly Secretaries of State from various states).  Id. at 3.

The federal defendants notified the court that plaintiff has failed to meet the requirements

of Federal Rule of Civil Procedure 4(i), which applies to service upon the United States and its agencies and employees, and requires a plaintiff to (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk …; (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer. Plaintiff's service was plainly ineffective under these terms.

Service was also ineffective on the defendants who have not appeared. As to James Gallagher, plaintiff sent a mailing (it is unclear what documents were actually mailed) to what appears to be an office address. ECF No. 26 at 4. Federal Rule of Civil Procedure 4(e) provides four methods for accomplishing service upon an individual: (1) by delivering a copy of the summons and complaint to the individual personally, (2) by leaving a copy of each at the individual's residence "with someone of suitable age and discretion who resides there," (3) by delivering a copy to an agent authorized by law to receive service of process, and (4) by following state law governing service of process. Fed. R. Civ. P. 4(e)(1), (2). California law permits service upon an individual through personal delivery, or delivery to an authorized agent. Cal. Civ. Proc. Code §§ 415.10, 416.90. Mailing documents to Gallagher's business address did not accomplish service.

As to the Rhode Island EEOC, it is apparent that there was no service at all. The Rhode Island EEOC is not listed on plaintiff's document showing addresses served by mail (the vast majority of addresses do not correspond to any named defendant). ECF No. 26 at 3-5. Accordingly, the court concludes that the Rhode Island EEOC did not receive service in any form and is not on notice of the existence of this case.

The federal defendants ask that, given the nature of this case and plaintiff's repeated filing of frivolous motions, the court dismiss the case rather than provide plaintiff a second opportunity to adequately complete service. While ordinarily the court would give a pro se litigant the

opportunity to correct a service defect, the nature of the complaint and the course of this litigation, discussed further below, make clear that to do so in this case would be both futile and an ineffective use of government resources.

This Court expressly "caution[ed] plaintiff that this case may be dismissed if service of process is not accomplished within 90 days. See Federal Rule of Civil Procedure 4(m)." ECF No. 7 at 7. This court, one of the busiest districts in the United States, has inherent authority to control its docket and can sua sponte dismiss plaintiff's complaint for violation of its order (ECF 7) and governing federal rules. See Link v. Wabash Railroad Co., 370 U.S. 626, 629-31 (1962) (recognizing that a federal district court has the inherent power to dismiss a case sua sponte for failure to prosecute or comply with a court order, even though the language of Rule 41(b) of the Federal Rules of Civil Procedure appears to require a motion from a party).

Further, in determining that leave to cure the service defects should not be granted, the court notes that plaintiff has not made any specific allegations that plausibly relate to any of the un-served defendants, and the substance of his complaint makes clear that he would be unable to do so if given the opportunity to amend. In light of the particular circumstances of this case, the undersigned recommends that the district court utilize its inherent power to achieve the orderly and expeditious disposition of cases by dismissing this action against the unserved defendants pursuant to Rule 41(b) for failure to prosecute and failure to comply with a court order.

### III. The Court Lacks Personal Jurisdiction Over Utah Defendants

The Utah defendants move to dismiss for lack of personal jurisdiction. ECF No. 23. Plaintiff was ordered to file responsive briefing to this motion, and while he did file responsive briefing, he did not address the issue of personal jurisdiction. ECF No. 41. Nonetheless, in the interest of judicial economy, the court considers the motion on the merits.

On a motion challenging personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, "bears the burden" of establishing that jurisdiction exists. In re Boon Global Ltd., 923 F.3d 643, 650 (9th Cir. 2019). When the court decides the issue of jurisdiction without an evidentiary hearing, based only on affidavits and discovery materials, a "plaintiff must make only a prima facie

4

showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." Myers v. Bennett Law Offices, 238 F.3d 1068, 1071 (9th Cir. 2001) (citing Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977)). The prima facie showing is achieved by producing admissible evidence which, if believed, would sufficiently establish personal jurisdiction. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). Accordingly, the court accepts uncontroverted facts in the complaint as true. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). Jurisdictional facts cannot, however, be established by nonspecific, conclusory statements. Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986) (citing Kaylor v. Fields, 661 F.2d 1177, 1182-83 (8th Cir. 1981) (although liberally construed, the complaint "must contain something more than mere conclusory statements that are unsupported by specific facts")).

In determining the existence of personal jurisdiction, a district court generally applies the law of the state in which the district court sits. See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. Id. (citing Cal. Code Civ. Proc. § 410.10). For a court to exercise personal jurisdiction over a nonresident defendant, the defendant must have "minimum contacts" with the forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted).

Personal jurisdiction may be either "general" or "specific." Dole Food Co. v. Watts, 303 F.3d 1104, 1110-11 (9th Cir. 2002). General personal jurisdiction exists only when a defendant is physically present or when a defendant's activities in the forum state are "continuous and systematic" such that the contacts approximate physical presence in the forum state. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004). "Specific jurisdiction, on the other hand, depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is

therefore subject to the State's regulation." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citations omitted). The Ninth Circuit has adopted a three-pronged test to determine whether a court may exercise personal jurisdiction over a non-resident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987). The plaintiff has the burden on the first two prongs, after which "the burden ... shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 802.

It is clear in this case that the court lacks personal jurisdiction, either general or specific, over the Utah defendants. The Lieutenant Governor and state Attorney General are government offices created by the Utah Constitution. Utah Const., art. VII, § 1 ("The elective constitutional officers of the Executive Department shall consist of Governor, Lieutenant Governor, . . . and Attorney General."). The Lieutenant Governor is the chief elections officer for the State of Utah. Utah Code § 20A-1-105. This work occurs exclusively within the bounds of Utah, as all voters in Utah elections must be Utah residents. Id. § 20A-2-101(1). Utah residents who temporarily reside outside the state (including in other states, such as California) may vote in Utah elections, Id. § 20A-2- 105(4)(e), but any such involvement with individuals in California is minor and necessarily transitory, as the individuals must be intending to return to Utah. Id.

Further, plaintiff does not allege he is a citizen of Utah or a Utah voter living in California, he only alleges that he wished to appear on the Utah ballot. Plaintiff does not allege that the Utah defendants directed their activity in any way toward California. Plaintiff simply fails to show that the Utah defendants took any action at all related to any California contacts, including himself. It would be unreasonable for the court to assert personal jurisdiction over the Utah defendants. Accordingly, their motion to dismiss must be granted.

**IV. Plaintiff Fails to State a Claim Against California or New Hampshire Defendants**

The California and New Hampshire defendants move to dismiss this case for failure to state a claim upon which relief can be granted. ECF Nos. 15 and 33. Plaintiff opposed the motion filed by the California defendants. ECF Nos. 41. Plaintiff also filed a motion to dismiss and to strike defendants' filings, which the undersigned construes as an opposition to the motions to dismiss. Accordingly, the contents of the document have been considered in assessing the merits of the motions to dismiss. ECF No. 46.

    A. Legal Standards Governing Motions to Dismiss

"The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954,

960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001). t

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014). The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

      B.   <u>Plaintiff's Allegations are Inapplicable to all Defendants Except for the California Secretary of State</u>

Plaintiff's complaint does not make any specific allegation against any defendant, rendering it insufficient under Federal Rule of Civil Procedure 8(a), which requires plaintiff to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that does not meet the Rule 8(a)(2) standard is subject to dismissal under Rule 12(b)(6). Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003). Dismissal for a failure to comply with Rule 8 is typically with leave to amend, however in this case it is clear that the allegations cannot support a claim against the majority of the defendants because they are simply not involved with placing candidates on state ballots or enforcing signature collection requirements.

As is true for all defendants, the complaint does not allege any facts particular to the California State Treasurer or the California Attorney General. Extrapolating from Tyler's allegations what his claims against these defendants might be, there is no theory upon which he

8

1 can proceed against them. To the extent Tyler's claims arise from his request to the Secretary of
2 State to be placed on the 2024 general election ballot as a presidential candidate, the State
3 Treasurer and the Attorney General play no part in that process. Under California law, the
4 California Secretary of State is the "chief elections officer of the state and shall administer the
5 provisions of the Elections Code. The Secretary of State shall see that elections are efficiently
6 conducted and that state election laws are enforced." Cal. Govt. Code § 12172.5; see also Cal.
7 Elec. Code § 10 ("The Secretary of State is the chief elections officer of the state.").

8     The nomination papers for independent candidates for President of the United States must
9 be signed by at least 1% of the registered voters in California. Cal. Elec. Code § 8400. The
10 electors pledged to the independent candidate file the nomination papers with the Secretary of
11 State. Cal. Elec. Code § 8303. The candidate's name is then included on the ballot. Cal. Elec.
12 Code § 8304. Under this scheme, neither the State Treasurer, nor the Attorney General, nor the
13 State Assembly, have any duties with respect to the qualification of candidates for inclusion on
14 the ballot. Accordingly, Tyler cannot maintain any claim against these defendants based on his
15 request to be placed on the ballot.

16     Tyler does include in the attachment to his complaint emails he sent to both the Treasurer
17 and the Attorney General, in which he complains that the Secretary of State violated various laws
18 by refusing his request to be placed on the ballot. ECF No. 1 at 36-41, 52, 60-62. These
19 attachments suggest that Tyler may intend to assert claims against the State Treasurer and
20 Attorney General for failing to investigate and/or prosecute the Secretary of State. There is no
21 legal basis for any such claim, however. A plaintiff has no right to have another person
22 criminally prosecuted. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private
23 citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").
24 There is no Article III standing for a plaintiff to allege an injury based on a failure to prosecute or
25 investigate alleged crimes by third parties. Pratt v. Helms, 73 F.4th 592, 595 (8th Cir. 2023);
26 Lefebure v. D'Aquilla, 15 F.4th 650, 655 (5th Cir. 2021); Mitchell v. McNeil, 487 F.3d 374, 378
27 (6th Cir. 2007); United States v. Grundhoefer, 916 F.2d 788, 792 (2nd Cir. 1990).

28     The same logic applies to the New Hampshire defendants. Plaintiff has named the New

Hampshire Department of Justice as a defendant, but the New Hampshire DOJ does not manage the process of placing candidates on the presidential ballot. Under New Hampshire law, a candidate may seek to be listed on New Hampshire election ballots as a candidate for President of the United States using the nomination papers process. See N.H. RSA 655:53.2. The nomination papers process requires the candidate to timely submit verified nomination papers signed by 3,000 registered New Hampshire voters to the New Hampshire Secretary of State. See N.H. RSA 655:40 to 655:43. The New Hampshire Secretary of State is responsible for preparing ballots for the biennial New Hampshire General Election, which during presidential election years includes electing New Hampshire's electors of the president and vice-president of the United States. See generally N.H. RSA chapter 656; N.H. RSA 653:2. The New Hampshire Secretary of State is further responsible for ensuring these ballots include the "name of each candidate who has been nominated in accordance with [New Hampshire election laws]." N.H. RSA 656:4. The New Hampshire Department of Justice is entirely uninvolved.

### C. Plaintiff Cannot State a Claim Against the California Secretary of State

This case must be dismissed because there is no cognizable basis for a legal claim against the California Secretary of State, either for a violation of plaintiff's constitutional rights or his rights under the Americans with Disabilities Act. In De La Fuente v. Padilla, 930 F.3d 1101, 1105 (9th Cir. 2019), the Ninth Circuit expressly held that Elections Code section 8400, which requires independent candidates to collect signatures from one percent of registered voters in California to appear on the ballot, does not violate the First or Fourteenth Amendments because the "overall scheme does not significantly impair ballot access." Further, as the Ninth Circuit recognized, "the Supreme Court has long recognized the 'important state interest in requiring some preliminary showing of a significant modicum of support' and 'in avoiding confusion, deception, and even frustration of the democratic process at the general election.'" Id. at 1106 (quoting Jenness v. Fortson, 403 U.S. 431, 442 (1971)). In light of the Ninth Circuit's holding, plaintiff's constitutional claims are fatally flawed. West v. Atkins, 487 U.S. 42, 48 (1988) (to state a claim under 42 U.S.C. § 1983, a plaintiff must show that there was a violation of a right secured by the Constitution or laws of the United States.)

1    Plaintiff's ADA claim likewise fails.  Though the complaint is not specific, it appears
2 plaintiff brings a claim under Title II, which provides that no "otherwise qualified individual with
3 a disability in the United States . . . shall, solely by reason of her or his disability, be excluded
4 from the participation in, be denied the benefits of, or be subjected to discrimination under any
5 program or activity receiving Federal financial assistance."  29 U.S.C. § 794.  A Title II claim has
6 three elements: "the plaintiff must show that: (1) he is a qualified individual with a disability; (2)
7 he was either excluded from participation in or denied the benefits of a public entity's services,
8 programs, or activities, or was otherwise discriminated against by the public entity; and (3) this
9 exclusion, denial, or discrimination was by reason of his disability."  Cohen v. City of Culver
10 City, 754 F.3d 690, 695 (9th Cir. 2014).  A claim under Section 504 of the Rehabilitation Act,
11 which Tyler pairs his ADA claim (ECF No. 1 at 10), has the same elements.  Mayfield v. City of
12 Mesa, 131 F.4th 1100, 1109 (9th Cir. 2025) (internal citations omitted).

13    The failure to provide a reasonable accommodation can constitute discrimination
14 satisfying the second element of a Title II claim.  Updike v. Multnomah County, 870 F.3d 939,
15 949 (9th Cir. 2017).  However, to prevail on a reasonable accommodation claim under Title II,
16 the plaintiff must show that a public entity failed to make reasonable modifications that would
17 accommodate the plaintiff's disability without fundamentally altering the nature of the program
18 or activity.  A.G. v. Paradise Valley Unified Sch. Dist. No. 69, 815 F.3d 1195, 1206 (9th Cir.
19 2016).  Importantly, the ADA does not require the government to provide an accommodation that
20 an individual requests or prefers—it must only provide an accommodation that is reasonable.
21 Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002).

22    Here, Tyler fails to allege facts supporting an ADA or RA claim against the Secretary of
23 State for two reasons.  First, he has not alleged any nexus between his alleged disability and his
24 ability to meet the signature requirement.  California law does not require that Tyler physically
25 obtain all signatures himself, and he has not pled any facts showing that he is prevented from
26 using volunteers or contractors to obtain signatures.  See, e.g., Acosta v. Wolf, No. 20-2528, 2020
27 WL 3077098, at * 6, 2020 U.S. Dist. LEXIS 101296 (E.D. Pa. June 10, 2020) (ruling that a
28 plaintiff failed to plead facts showing that signature collection requirements constituted

discrimination in violation of the ADA in part because "nothing prohibits [plaintiff] from asking volunteers or hiring assistance to help gather signatures either."). Elections Code section 8400 imposes exactly the same requirements on Tyler as on any other independent candidate seeking to appear on a statewide ballot, and Tyler has not alleged any facts showing that the statute has a discriminatory effect on him due to his disability. Indeed, aside from making the bare allegation that he has a disability, he has not alleged any facts showing his disability is in any way related to an inability to gather signatures.

Second, Tyler fails to allege a reasonable accommodation for his disability. His desired accommodation—waiver of the signature requirement—is per se unreasonable, because it would violate Elections Code section 8400, from which the Secretary of State has no legal authority to deviate. See Wolf v. City of Millbrae, No. 21-cv-00967-PJH, 2021 WL 3727072, at *4, 2021 U.S. Dist. LEXIS 159025 (N.D. Cal. Aug. 23, 2021) (a request for an accommodation that would violate the law is per se unreasonable); Triche-Winston v. Shewry, No. 2:06-cv-0109-MCE-GGH-PS, 2007 WL 891894, at *5, 2007 U.S. Dist. LEXIS 100950 (E.D. Cal. Mar. 22, 2007) ("[W]here a reasonable accommodation would require violation of state law, it cannot possibly be required."). Further, Tyler's request for a waiver of the signature requirement would fundamentally alter the State's system of ballot qualification because it would eliminate, at least for persons with disabilities, any requirement that independent candidates in statewide elections show support among the electorate before placement on the ballot. This would undermine California's legitimate interest in protecting its elections from "frivolous or fraudulent candidacies," introduce inefficiency and expense, and risk overcrowding the ballot and causing voter confusion. See Clements v. Fashing, 457 U.S. 957, 965 (1982). Accordingly, plaintiff's claims must be dismissed.

### V.  Leave to Amend Is Not Appropriate

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. Noll, 809 F.2d at 1448. In this case, it is apparent from the gravamen of the complaint that leave to amend would be futile.

Even if plaintiff amended his complaint to name as defendants only those public officials with direct authority over elections, and properly served them all, this court would almost certainly lack personal jurisdiction over officials in states other than California for the reasons explained above as to the Utah defendants. Moreover, amendment could not result in any viable claim for relief. Plaintiff's § 1983 claims against the California Secretary of State fail as a matter of law pursuant to De La Fuente, 930 F.3d at 1105, and analogous claims against the election officials of other states are precluded by the principles recognized in Jenness, 403 U.S. at 442, as applied by the De La Fuente court. Plaintiff's ADA and RA claims cannot be saved by the pleading of additional facts regarding nexus, because his desired accommodation—waiver of the signature requirement—is per se unreasonable for the reasons explained above. Finally, this court lacks the authority to provide the relief requested: a declaration that the 2024 presidential election is null and void and that all executive actions of the present administration are therefore also null and void.

### VI. Plaintiff's Motions

Plaintiff has filed several motions, all of which are noncognizable. On March 28, 2025, plaintiff filed a "Pretrial motion to Establish Pattern of Rights Deprivation" in which he indicates that he is bringing an action against the United States of America and its territories for violations of law and, specifically, that he wishes to create a ballot measure eliminating restrictions on the sale and consumption of alcohol. ECF No. 21 at 2-3. This motion bears no clear relation to the complaint in this case, nor does it request any relief that the court can provide. See ECF No. 21 at 13. It is accordingly DENIED.

On May 22, 2025, plaintiff field a "Motion to Introduce Evidence of Congressional Knowledge Regarding Aid and Comfort to Oath Breakers and Claims of Treason." ECF No. 39. This motion does not ask for any relief related to the complaint; instead, it asks for unrelated discovery on the U.S. Congress. ECF No. 39 at 18. This motion is noncognizable and unrelated to the complaint and is accordingly DENIED.

On June 17, 2025, plaintiff filed a motion to dismiss and to strike that substantively responds to the California and New Hampshire defendants' motions to dismiss. ECF No. 46. To

the extent plaintiff intends this document to be a motion to dismiss defendants' motions under Fed. R. Civ. P. 12(b)(6), the motion is denied because Rule 12(b)(6) applies to dismissal of pleadings, not motions. To the extent plaintiff intends this document to be a motion to strike under Fed. R. Civ. P. 12(f), the motion is denied because the motions to dismiss were properly filed and, as set forth above, are meritorious. The motion at ECF No. 46 is accordingly DENIED.

Finally, on July 29, 2025, plaintiff filed an "Emergency Motion for Ruling on Pending Matters, Constitutional Supremacy Enforcement, Mandatory Criminal Prosecution Order, Comprehensive Relief, and Venue Transfer." ECF No. 47. The motion is frivolous on its face and is DENIED.

## VII.    Pro Se Plaintiff's Summary

It is being recommended that your case be dismissed without leave to amend. You have 21 days to file objections to the recommendation. The District Judge will make the final decision and issue the final order.

## VIII. Conclusion

For the reasons set forth above, it is ORDERED that plaintiff's motions at ECF Nos. 21, 39, 46 and 46 are DENIED.

Further, it is hereby RECOMMENDED that the motions to dismiss at ECF Nos. 15, 23, and 33 be GRANTED, and that this case be dismissed in its entirety without leave to amend for the reasons set forth above.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to

////

////

////

appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: August 29, 2025

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE